The United States Court of Appeals for the Ninth Circuit is now in session. Good afternoon. This is the time set for oral argument in re-hearing en banc, the case of United States of America v. Randly Irvin Begay. We are ready to hear arguments from the appellate. Thank you. Edie Cunningham of the Federal Defender's Office on behalf of Mr. Begay. The rationale of Borden compels the conclusion that federal second degree murder is not a crime of violence because it can be committed recklessly, albeit with extreme disregard for human life. Borden set up a categorical divide between purpose and knowledge on the one hand and recklessness on the other hand. Purpose requires a specific intent to cause harm and knowledge entails awareness of a practical certainty that harm will occur. Both require a deliberate choice to cause harm. Recklessness on the other hand involves a risk of harm. As the Borden court said, the phrase use of force against another demands action that is targeted against a person or property. And as Justice Thomas said in his view, the use of physical force describes an intentional act designed to cause harm. This is simply not required for reckless second degree murder. The least serious iteration of second degree murder, as I said, can be committed recklessly with extreme disregard for human life. But like ordinary recklessness, this can involve a risk of injury or death that is far less than a substantial certainty and need not even approach a likelihood. That is discussed in Professor Lefebvre's treatise. Justice Kagan made clear that acts such as speeding through a crowded area or drunken reckless driving do not fit within the definition of crime of violence. But these kinds of activities regularly support federal second degree murder convictions. And I've cited several cases in the recent 28J as well as in the supplemental brief. This is not a one-off. This is a standard charging practice in federal court. And such force simply isn't directed at an object. Reckless and drunk drivers, no matter how reckless they are, don't intend to or know that they're going to hit anybody. They just happen to hit someone. And other examples that are discussed in the treatises and the cases include things like failing to confine an aggressive dog or throwing an object off a roof or out a window. But Justice Kagan held out something very similar, jumping off a mall balcony during business hours as something that does not qualify as a crime of violence. And I would also note that this court in Pineda Duval noted specifically gave the example of driving at high speeds through a crowded street as something that would support second degree murder. And again, Justice Kagan held that out as something that does not qualify. And Pineda Duval also said that this need only entail the possibility of a fatal collision. But again, that is far less than a substantial certainty of harm. Ms. Cunningham, can I just ask you a question? It seems like the Leo Kahl case makes clear that we must consider not only text, but also context. And here we are considering the phrase crime of violence. So I guess what I wanted to ask you is, can you make a plausible argument that Congress did not intend second degree murder to qualify as a crime of violence? Your Honor, first of all, under Borden's rationale, premeditated first degree murder would always qualify. But we also have to keep in mind that the congressional reports and other materials that have been cited also note that Congress intended assault to qualify. And we know that reckless assaults don't qualify, reckless homicides don't qualify, and most states have reckless assault and reckless homicide statutes. Also, and we also have to keep in mind that we're not talking about the consequences of an action, but the mental state. That's what the Supreme Court has held, that the language of the Elements Clause is focused on. And the court is not free to rewrite a statute because of policy concerns, or because of offenses that might be excluded. Justice Kavanaugh in his dissent in Borden pointed out many crimes that are with very disturbing facts that are excluded because recklessness is excluded. And I would note that those facts, many of them would also support a second degree murder conviction. For example, the police officer without a siren going 100 miles an hour through a red light in order to get to the scene of a shoplifting. Those are the very kinds of things that often support second degree murder convictions. And I would also like to emphasize that there is really a blurry line between recklessness and extreme recklessness, which is discussed in the model penal code commentaries section 210.2 at pages 19 and 22. Only some, according to the commentaries, only some extremely reckless murders can be properly qualified or characterized as exhibiting the same level of culpability as intentional murder. The standard reckless with extreme disregard for human life, as the commentaries point out, is inherently a bit unclear. There's just a fine line. There can be at least a fine line between ordinary recklessness and extreme recklessness. It's just a difference of degree. Thank you. Judge McEwen? Yes. Good afternoon, Ms. Cunningham. I think that I see Borden a little differently than you, and I don't see it quite so categorically as answering the question. The primary reason is that the very question we're trying to grapple with, in footnote four, Borden, the court left open. And so I don't think where you have the I don't think the court has decided that. So my question really goes along the lines of the First Circuit case in the United States versus Baez-Martinez. And why wouldn't a defendant have to be aware of potential victims before he can act with indifference toward them? In other words, that takes in the very question that I think we're centered on, and that's physical injury to another. Well, Your Honor, drunken impaired drivers are aware that there are potential victims because they're driving on roads where they know other people are going to be. But driving, I mean, Justice Kagan held out a prime example of something that doesn't qualify driving at high speeds through a red light in a crowded area. She also held out the example of jumping off the second floor balcony of a mall during business hours. So in both of those cases, those defendants were also aware of potential victims, but their activities were characterized as ordinary recklessness, and that doesn't qualify. Well, does the footnote mean anything? Because in your characterization, you would basically say they've answered the question. They didn't need the footnote. Your Honor, they weren't presented with the question, and they obviously didn't want to reach it. It was, I mean, I listened to the oral argument or read the transcript of it, and it was a point of contention. It's something the court did not want to reach. And so the court included that footnote. Plus, probably the parties did not investigate it as thoroughly as we have because that wasn't the question before the court. But as I've explained, the examples that Justice Kagan gave and the language she used really compels the conclusion that at least in its least serious form, extreme reckless second degree murder does not qualify. There may be, and I think that there are some reckless murders that get close to knowledge, but many of them don't. And the drunken reckless driving cases are probably the best example of that. But we have to consider the very least serious offense that can be counted as federal second degree murder. And we see many, many cases involving drunken reckless driving or similar behavior where the defendant's activity is very close to ordinary recklessness and very far from the truth. I too don't see the reason for the footnote except that the court did not wish to reach the very question that we have to reach now. And I guess my question to you is, the way in which intentional requires a conscious object. Can you provide any examples of second degree murder in which the defendant did not use force against a conscious object? Yes, Your Honor. All of the drunken reckless driving cases, impaired drivers don't set out to drive in order to hurt someone. That is not their conscious desire. Are they routinely charged with second degree murder? Yes, they are, Your Honor. I've cited several examples from federal case law, and I also have cited some examples from state case law where there is a variation of murder that involves extreme recklessness. And I'm from Arizona. I used to practice in Arizona. It is regularly charged as second degree murder. That is really the standard. So that is the way the statute has been interpreted. And certainly, as Justice Thomas said in his dissent in Voisin, and which his reasoning he adopted in his concurrence, no matter how reckless somebody is in driving a car, they simply, it's an accident. They don't mean to hurt somebody. Now, it is possible for somebody to use a car as an intentional weapon, but that's not what goes on in these reckless drunk driving cases that are charged as second degree murder. And it's also not what goes on when somebody recklessly throws an object off a building or jumps off a building and hits someone. Thank you. Judge Rawlinson. I have no questions. Thank you. Judge Clifton. No questions. Thank you. Judge Smith. You're muted, Judge Smith. Counsel, under the federal statute, there are some versions of first degree murder that don't require premeditation like murder during an escape. Would accepting your argument mean that first degree murder is no longer a crime of violence? Well, first degree premeditated murder will always qualify, and at least under this court's model jury instructions, premeditated murder and felony murder are divisible. That's the way this court advises that it, that juries be instructed. But even in, or it's murder during an escape? Well, felony, I think some forms of felony murder, I haven't thought through it. They may not qualify because of the mental state, but first degree premeditated murder would always qualify. And under this court's model jury instructions, first degree premeditated murder and felony murder are separate offenses that get separate jury instructions. And I'll point you to page 12 of the supplemental brief, which is document 129, where I cite those jury instructions. But I'd also like to point out that unlike burglary and assault and some of the lesser crimes, it's really not so important for murder to be a crime of violence. Because with second degree murder, the person can already get natural life imprisonment if the circumstance is warranted. And certainly if the second degree murder is approaching knowledge and intentionality, the person is likely to get a very high sentence. And with first degree murder, the minimum sentence is natural life. So it's not, I can see where Congress would not have been as concerned about that because people who have murder convictions are going to be in prison for a very long time. Anyway, they're probably not as likely to be out possessing a gun because they're still in prison. They're not going to be out at all if they've been convicted of first degree murder. And I would also like to note in the aggravated felony statute in the immigration context, murder is enumerated as an aggravated felony. So Congress saw fit to enumerate it instead of relying on the elements clause to cover it. And I also think that that suggests that Congress did not think that murder would always be a crime of violence. Because in some places they have chosen to enumerate it, even where there's also a force clause, excuse me, an elements clause, such as in the aggravated felony statute and in the career offender guideline. So I don't understand really why they would have enumerated if they thought that it would always be covered by the elements clause. Thank you. Judge Ikuda. Thank you. So we're not looking at state second degree murder. We're looking at federal section 1111. If we sitting on bank now construed section 1111 as being limited to those extremely reckless situations that are arguably oppositional or directed at someone like shooting into a crowded room, it was one of the examples, how would that affect your argument? Would an 1111 offense then be a crime of violence? Under the categorical approach, this court needs to, must focus on the least serious variation of- Yes, so we're construing it as the least serious variation of an 11 offense would have an oppositional element to it. Well, the federal second degree murder is not divisible. There is no oppositional element to it. It is simply, as it's defined by this court's jury instructions, it is simply to kill intentionally or deliberately or recklessly with extreme disregard for human life. Right. Well, if we say that depraved hard murder does not include drunk driving, then are we okay? Well, your honor, I don't believe the court is at liberty to do that because under the categorical approach, you are limited to evaluating the elements of the statute, which here is, does not require, includes drunk driving. Nobody knows what depraved hard means. I certainly don't know what a depraved hard is. So I think I could say that a depraved hard does not include drunk driving. I don't see anything in the statute stopping me from making that interpretation. Is there? Well, your honor, the model penal code and this court's jury instructions don't define malice of forethought as intentional and deliberate or recklessly with extreme disregard for human life. So I don't think that would be appropriate under the just not there. But your honor also asked about, I'm sorry. Oh, go ahead. Go ahead. Your honor also asked about state laws and state laws vary quite a bit in their elements, state murder statutes. So it's hard to predict how a ruling on federal second degree murder would impact that. But I would say that I went through all of the statutes in the ninth circuit that were cited in the amicus brief. And there really are all over the place to Hawaii and Montana do not even punish extreme recklessness as murder. They require minimum of knowledge and contrary to what the amicus said, the case law bears that out. Other statutes would, are either going to be divisible as in regard to extreme recklessness, or they are going to not qualify because one of the subsections allows reckless or negligent. Thank you, Judge Kristen. I guess I have two questions. The first is, is it your position counsel that we don't need to parse degrees of recklessness that they necessarily, any degree of recklessness necessarily fails? Your honor. Yes, I do believe that, but. So can I just follow up on that? If that's the case, that's how I read your briefing. If that's your case, I struggle with Judge McEwen's question. What's footnote four, four? Is it your position then that it was extraneous and the Supreme Court didn't need to set that aside? Your honor, it is a different mental state, a different degree of recklessness than ordinary recklessness. The statute that they were dealing with was ordinary recklessness. So they didn't have to reach extreme recklessness, but extreme recklessness in its least serious form does not qualify under Borden's rationale. I don't think that any form of recklessness gets to knowledge, but the court doesn't need to concern itself with that. Could I just interrupt? Because I have a very limited time as far as getting to knowledge. We know from Borden that knowledge is sufficient. I'm trying to figure out whether knowledge is sufficient. Could I focus your attention on the model jury instruction and just ask you what do we do with that last phrase? It's reckless indifference towards human life, directed towards human life. Is that meaningful for our analysis? Well, our jury instruction is recklessness with extreme disregard for human life. All right. And the question is, how certain is it that human life is going to be taken? And there's a wide range of possibilities within the mental state of extreme recklessness. As I've said, the drunk driving cases, even though drunk driving deaths are tragic and there's no killing someone are a fraction of 1%. When you think of how many drunk driving incidents there are in the country, the CDC says that there are 111 million and 10,000 drunk driving deaths each year. So that is not even anywhere near a likelihood or substantial certainty as LaFave said. Thank you. Judge Bennett. At least 1909, the federal murder statute has provided that murder is the unlawful killing of a human being with malice aforethought in very close to that exact language and perhaps even before 1909. In his concurrence, dealing with a different subject, but in his concurrence in Arizona, Justice Scalia noted the historical fact that basically the meaning of malice aforethought has existed in Anglo-American legal system jurisprudence largely unchanged since at least the early 16th century. Do you agree that Congress going back more than a hundred years adopting the malice aforethought as the sine qua non of murder was putting in malice aforethought that Anglo-American legal system history of malice aforethought going back to what Justice Scalia thought was the early 16th century? Do we look at that history in deciding what he was looking at very, very old authorities, but by the early 19th century, I believe the meaning had evolved a bit and it did not require a certainty of death anymore. It just required recklessness with extreme disregard for human life. So I think we need to look at the case law that we've cited that is focused on the 20th century. I think maybe even some of the cases we cited were in the late 19th century. I believe I recall a Virginia case that included extreme recklessness. And so I think that that is what Congress had in mind when they enacted the statute and not what was going on in 1600. Well, counsel, I have to, I think respectfully disagree with you. One of the sources that Justice Scalia cited that your friend has cited for the government, this seminal work from the very late 19th century, the history of the criminal law in England specifically talked about malice aforethought in this context, having knowledge that the actor omission, which causes death will probably cause the death of or grievous bodily harm to some person. Is it your view that if that is what we imbue into malice aforethought, that is knowledge that the actor omission, which causes death will probably cause the death of or grievous bodily harm towards some person, that we still are not dealing here with a crime of violence? Or is it your view that, yeah, we would be, but that's evolved over time? No, I still don't think it would qualify because probably is far less than a practical certainty. But as I have tried to emphasize, that is not the standard for malice as it is interpreted and applied in federal courts throughout this country. And I think the drunk and reckless driving cases are the best example of that. Thank you. Judge Miller. Good afternoon, Ms. Cunningham. I'd like to follow up on Judge Smith's question. As I understood your answer there, you said that premeditated first degree murder would necessarily qualify. But in your brief, in the supplemental brief, you said premeditated first degree murder would likely fall within the elements clause. And I guess I'm wondering what you had in mind with that first degree premeditated murder and felony murder are very separate offenses. And this court's jury instructions in the 10th and 11th circuit, which this court cites in its models, advise separate jury instructions for those offenses. I don't know that this court has definitively decided that. So perhaps that's why I put likely, but I think that they should be that murder, second degree or first degree need to be crimes of violence because especially with first degree, the person for a federal offense is in prison for the rest of their lives. Anyway, so I don't think that that was foremost on the minds of Congress in either 924C or the ACCA. There's nothing in the legislative history that indicates that Congress was thinking about important because of the long sentence that a person can get for second degree murder. Thank you. Judge Van Dyke. Thank you, counsel. So it seems to me your best argument that this reaches too deep into sort of the, you know, the call it five different levels and reaches deep into recklessness is the DUI example. But I wonder, I think, I don't think your argument is that all the UIs are extreme recklessness. It seems some DUIs would be charged as exhibiting malice, a depraved heart or whatever you want to call it, and some would be charged as something less than that. And I guess the question I've got is the ones that are charged as second degree murder and therefore somehow seem to be exhibiting extreme recklessness. I looked at some of your cases you cited in your Rule 28J letters, and they involve people that have either been gotten a bunch of DUIs, right, and they finally kill somebody. And so the thought being you're essentially, I think the best example would be like instead of just shooting into a crowded room, maybe every morning going and shooting once into a room that you don't know if there's somebody in there. But if you do it every morning, we think there's a pretty high likelihood that you're going to end up shooting somebody. So you're driving that way and therefore because it's repeated behavior, it does exhibit this high risk. Why would that not be a good way of looking at sort of the difference, the type of DUIs that would qualify as opposed to just, for lack of a better word, the run-of-the-mill type DUI? Well, Your Honor, there's a great deal of overlap. I mean, if you look at some cases, some cases are charged with, are charged a second degree murder with multiple DUIs. Some aren't necessarily. Also, the fact that a person has, in all of those cases, the prior DUIs, there was no injury or death. So that doesn't contribute to knowledge of a practical certainty or close to that, that somebody is going to get hurt. I would say on the contrary, these people who obviously appear to be alcoholics and drink a lot and have a high tolerance, they do it all the time and they don't think anything's going to happen because it's never happened before. And none of those cases had somebody hurt someone previously. And I'd also like to point the court to United States versus Laura, L-O-E-R-A, which is 923 F 2nd 725, which is a case with very similar facts to Merritt and some of these other cases in which the jury looked at the prior DUIs, looked at the fact that he had had 18 beers and was driving very recklessly and said, that's ordinary recklessness and convicted him of involuntary manslaughter. There's just such a fine line between ordinary recklessness and extreme recklessness in those kinds of cases that it really doesn't make sense to say that anything that supports a second degree murder conviction is a crime of violence and approaches practical certainty or is close to it, because that's just not the truth. All right. Thank you very much. Do you have any final comments in the 14 seconds or do you reserve? I can probably give you two minutes for rebuttal. I would just like to note that the ball is in Congress's court. If they have used certain language, the Supreme Court has interpreted that language in a very strict way. The categorical approach is very strict. If Congress wants to Thank you, Ms. Cunningham. Ms. Lanham, can you come forward and state your appearance? Yes. Can everybody see and hear me okay? It looks like it. Your honors, may it please the court. My name is Krissa Lanham and I represent the United States. This case presents the question of whether murder is a crime of violence. Murder, which according to the Supreme Court, stands alone in terms of moral depravity and has been described as the quintessential violent crime. That federal second degree murder does indeed have as an element the use of force against the person of another is the common sense result of Borden's interpretation of the clause and this court's second degree murder case law for two main reasons. First, Borden makes clear that a crime of violence can be committed with an intentional or a knowing mens rea and that means that the metric against which you are measuring malice aforethought is knowledge, not just intentionality. And second, although malice aforethought is formulated using slightly different terminology from knowledge, it is indistinguishable from it for purposes of the elements clause based on two of its defining features. Malice aforethought, unlike ordinary recklessness, involves an exceptionally high degree of risk, so much so that courts describe death as being the natural, although not inevitable, result of the conduct. That is the level of risk standard. And second, under this court's case law, a defendant must actually be aware of that grave risk before choosing to commit conduct that kills a person. Case after case and the model penal code point out that malice aforethought must demonstrate such utter indifference towards the value of human life as to be comparable to purpose or knowledge. You should therefore answer this question as the First Circuit did in Baez-Martinez and affirm the 924C conviction. Ms. Lanham, let me ask you a question. I guess I have two. One, is the Board's plurality reasoning binding Supreme Court precedent for us? I believe it is, Your Honor. It is the reasoning with which the justices agreed, or at least the result with which the justices agreed. We do view Borden as binding precedent for the court. Okay. And if we look at that, then the Borden plurality tells us that the perpetrator must direct his actions against another. And so I'm trying to figure out how is that requirement satisfied in some of the examples of second degree murder cited by Mr. Begay, like extreme reckless drug driving, which we've been talking about, failing to keep a dog, aggressive dog locked up or the shooting at a point, but not aiming directly at another person. So I first want to address some of the standards set forth in those cases and the problems with which the way in which Mr. Begay is using those cases. So under the categorical approach, this court has to look at the standards that are set forth in those cases. It's not a conduct based approach. It's looking at the standards. And in several of those cases that the defendant cited, the standard that the court required is actually intent. So as an example, the Knight case, which was a malicious wounding case, is an intent case. If you then actually look at the standards that are involved in all of these cases, even the federal second degree murder, reckless driving cases, those courts, the fourth circuit in Fleming, the 10th circuit in Merritt, the sixth circuit in Sheffy, every single one of them required circumstances demonstrating that the defendant was aware of the grave risk to human life before he acted. And that satisfies Borden's directional conscious object standard. Judge Van Dyke. Yes, I want to follow up on the question that Chief Judge Begay just asked, as well as my question I asked the opposing counsel, which is the DUI example. Since DUIs seem to fall into both just mere recklessness and extreme recklessness, you know, I was trying to think of what is the difference between those two things, and it seems to me that there's probably many different things, but one would be that the cases talked about, as I talked about in your opposing counsel, is the number of times you're driving drunk, right? Are you doing it so much that it's like playing Russian roulette lots of times or something like that? I think I heard your opposing counsel say, well, actually, if you do that and you don't end up in an accident, you know, a whole bunch of times, that would almost seem to reduce the extreme recklessness. I suppose maybe your perception would be, well, you know, I haven't got an accident and I've driven drunk hundreds of times. Do you agree with that or what is your view of does the number of times that you've done something sort of increase the odds of a bad event happening? No, your honor, I don't agree with opposing counsel's answer to your question, and I'm glad that you asked me to because I wanted to point you towards the merit case that opposing counsel cited for specifically why it is that multiple occasions of drunk driving may actually then form a defendant's knowledge. In the merit case, the prior examples of drunk driving convictions were used by the government as 404B evidence of knowledge. And the 10th circuit held there that they were properly admitted as 404B evidence of the defendant's knowledge of the risk of death because he came into court two times prior and was convicted of drunk driving and informed that this was something that essentially can kill a person. And so it was the defendant's knowledge that really is the defining factor in these prior DUI cases as opposed to a level of risk, a level of risk analysis. Thank you. Judge Miller. Ms. Lanham, I'd like to ask you about the standard of review. In your brief, you noted that the claim that the defendant is asserting here was forfeited because he didn't raise it in the district court, and you urged us to apply plain error review. The panel relied instead on circuit precedent that says that we can review a claim de novo if it's purely legal and the government is consistent with what the Supreme Court has said about the scope of Rule 52 and when we're supposed to apply the plain error standard. Your Honor, I do believe that plain error review is applicable here. Obviously, the panel did apply de novo review because it is a question of law. I don't think that the practical effect of the outcome changes under either standard because looking at the effect on the defendant's substantial rights, if he was convicted of something that isn't a crime of violence, even under plain error review, that would be a problem for the defendant's substantial rights. So I believe that plain error is the standard that applies, but in looking at the question of whether murder is a crime of violence or not, that de novo review of the legal question is what drives the outcome, even under plain error review. Thank you. Judge Bennett. I have no questions. Thank you, Chief Judge Murgia. Judge Christen. No questions. Judge Ikuda. You mentioned that the standard in your view for the second degree extreme recklessness murder is aware of a grave risk to human life. That doesn't sound to me exactly the same as being against another purposely focusing or focusing or oppositional the way Justice Kagan described it. Are you asking us to deem that standard of aware of a grave risk to human life is equivalent to the oppositional directional standard that Justice Kagan described? Yes, Your Honor, for a few reasons. So in describing oppositional conduct, it seems that opposing counsel and the court in some ways are requiring purpose, but we know from Borden that that's not correct. It can be that a defendant knows of the risks. So in Borden, they gave the example of a defendant who sees somebody crossing the street, doesn't intend to run them over, but in trying to get from place to place, it's faster to run them over and therefore has committed a crime of violence because it's a knowledge standard. So the awareness of the grave risk of death is the equivalent to knowledge. And to get back to the question... Excuse me. In the DUI context where you just know you had an extreme amount to drink and you're driving on a crowded road, how does that measure up to this oppositional directed at another human being? Your Honor, the prior knowledge from the multiple DUIs, as Baez Martinez stated about this particular murder by car context, the defendant's conduct must be so extreme and the circumstances such that the defendant necessarily must have been aware of the risk to life and taken the action anyway. So it is that awareness of the risk to life and decision to act nonetheless, that even in the murder by car context, and that's what we're talking about. When these cases are charged a second degree murder, this is not reckless driving. This is a jury has found malice of forethought based on the defendant's conduct. And so even in these cases, it amounts to knowledge based on the defendant's prior conduct or other circumstances showing that must have been aware of the risk to life. Could I ask one more question? Yes. Yes. If we disagree with this deemed oppositional approach, just following up on the same question I had for opposing counsel, could we construe 1111 in a way that would eliminate the drunk driving example? I have two responses to that question. The first is that this court already has in Pineda Doval and Hernandez Rodriguez. The court held that merely reckless driving is not sufficient. Merely DUI driving is not sufficient. You need more than that. Pineda Doval held that what you need is the defendant's awareness of the risk, a greatly increased level of the risk, and no justifiable reasons for taking that risk. So the court has already done so in those two cases that I just cited. And the second part of that answer is that this is all a little unusual because you're construing this in the context of 924 C, where murder is never going to have been committed using a car. And I recognize that under the categorical approach, as opposing counsel argued, you do have to look at the least conduct supported by the statute. But in every single case of 924 C murder, the defendant is going to have used a gun because that's the element of the 924 C crime. Thank you. Judge Smith. I think I know part of your answer to this in light of what you just said to Judge Ikuda, but let me just ask you, if we were to decide going forward that depraved heart murder satisfies 924 C 3A and was a crime of violence, would we necessarily have to find going forward that if the facts in merit, Sheffy, Fleming, and Hernandez, which were cited by the defense and our own Pineda Duval were to occur again, that they would no longer qualify as second degree murder? I don't think so for the reason that I gave in answer to both Judge Van Dyke's and Judge Fletcher's questions. I think you can sense some desire to, if you will, solomonically decide this case. How do we find it to do that? And if you leave those cases there, it makes it far more difficult. Can the government help us with that problem? Certainly. I think Baez Martinez did it. It looked at those cases and it held that the average drunk driving homicide is manslaughter. But the distinction with the second degree murder cases is conduct so extreme that the defendant quote, necessarily must be aware of the risk. So in these cases, and that's consistent with the holdings of Fleming, Merritt, and Sheffy, all using that awareness of the risk language. So you have a way to do that. But I do think that the fact that this murder, this type of murder is always going to be committed using a gun is something that the court can use in looking at the statutory context and the legislative intent as to 924C. The other point that I did want to make is that the state reckless driving cases, and not all of them are actually malice of forethought cases. Some of them are vehicular homicides or malicious wounding, like in the Knight case. And so the first circuit in Baez Martinez held that malice of forethought is special. It means more. It's a term of art, meaning more than maliciously. And so second degree murder cases are different from these other cases that the defendant has cited. Thank you. Thank you. Judge Clifton. Actually, Judge Smith asked my question, but your response does inspire one that I confess I haven't thought through myself yet, which is that I was on the original three judge panels. I lived with this case and the instructions and so forth. And now at this moment, I don't really recall. But can the position you take be squared with the conviction we have here based on the instructions that were given to the jury, which didn't go into these permutations offered by the first circuit? I did look really quickly at the language and the instruction just says to kill with malice of forethought means to kill either deliberately and intentionally or recklessly with extreme disregard for human life. And how open is it for us to try to redefine what that latter phrase means if the jury wasn't given the more detailed description that you've offered up? Your Honor, I think that that detailed description is implied in the term malice of forethought when you tell that to a jury. And that was the holding of the first circuit in Baez Martinez. It recognized that the standard, the lowest possible mens rea standard is extreme recklessness under circumstances manifesting extreme indifference to the value of human life. But it also gave the jury that malice of forethought definition, which triggers the term of art type analysis. So the jury was absolutely instructed in this case consistently with what we're saying and with Baez Martinez. Well, I'm not sure the phrase malice of forethought has great meaning to your average juror if all he's told or she is told is intentionally or with extreme disregard for human life. So the limitations that you suggested, I mean, I'd find it easy to say somebody who's driving drunk down a highway knowing there are people out there, that's extreme disregard for human life. You're trying to carve that out the way the first circuit has. Can we be confident that the jury proceeded with the carve out? I'm still not sure I hear a reliable answer to that question because malice of forethought, what's that supposed to mean to a juror? Your Honor, obviously extreme recklessness with disregard for human life is what it is told that it means. But malice of forethought does carry this ground with it that Judge Bennett was referring to in asking his question. But in terms of the object of the risk and the level of the defendant's awareness of the risk, this court has construed that term, extreme of the risk. Lacina states that that is what differentiates murder from, for example, manslaughter, which can be committed with a mens rea of extreme recklessness, but does not involve malice of forethought. So for those reasons, there is something distinct in the phrase malice of forethought. And that's consistent with this court's case law, both in Lacina and in Pineda Valle. Thank you, Judge Rawlinson. Thank you, Chief Judge McGeer. Counsel, if we were to accept your argument and write an opinion based on your view of the law, how would that opinion read when we're making the legal distinction between ordinary recklessness and extreme recklessness? Your Honor, the easy answer to your question is that it would look almost exactly like Baez Martinez, except that it would be easier for this court because its case law is so strong on both the awareness of the risk and the level of the risk. So the distinction between ordinary recklessness and malice of forethought's extreme indifference is first the level of the risk. The idea that death is the natural result of the conduct. That's distinct from the ordinary recklessness that the Supreme Court addressed in Borden, in that the Supreme Court looked at cases holding that it could even be less than 50% the risk involved in that. The Supreme Court specifically stated that it need not come anywhere close to a likelihood. There is a distinction between death being the natural and probable result as this court held in Celestine and that ordinary recklessness that the Supreme Court looked at in Borden. The second dimension is the defendant's awareness of the risk. So as I've been saying, Licina and Pineda Valle both require a heightened awareness of the risk that looks very much like knowledge, which the Supreme Court held was the awareness of a practical certainty. So here we require the awareness of a natural but not inevitable risk of death. You have something that looks very much like knowledge according to the Supreme Court's Borden framework under this court's case law. So counsel, are you suggesting that we would have a factor analysis, a two-factor analysis that we should set out to make a distinction between ordinary recklessness and extreme recklessness? Is that what you're advocating? As I read Borden, those were the two factors that were mainly motivating the Supreme Court's Now, underlying the Supreme Court's analysis was also the moral culpability of murder, which is really without question. Cases like Tyson and Justice Scalia's Shod concurrence talk about how there is no crime more morally culpable than murder. So in terms of the Supreme Court looking for violent crimes that set apart violent offenders, there's really no question under cases like Tyson and Shod that murder is different, that murder and malice of forethought specifically are set apart. Thank you, counsel. All right, Judge Wardlaw. Counsel, you keep referencing the fact that section 1924 involves firearms. Where does that go in the analysis? Does that go to awareness of the risk or to practical certainty? If you're pointing a gun at someone, it's more certain to be something that would cause death? How are you factoring that in? And would you make that analysis unique to section 1924? To section 924C, your honor? I see it as being something that matters both to the defendant's level of the risk and the defendant's awareness of the risk. But I do want to be clear that under the categorical approach, the court has to look at the least serious conduct, or sorry, the least serious mens rea that can constitute it. But in looking at the statutory context and looking at the purpose of the section 924C statute, this court can take into account that these murders are going to be committed with a gun. And certainly when we're talking about Russian roulette examples, like from the Pineda Doval case, a defendant who is pointing a gun at somebody's head and pulling the trigger, even if he doesn't mean for that person to die, he surely must be aware of a grave risk of death. All right, Judge McEwen. I had the same question really as Judge Wardlaw and I think you've answered that. Thank you. Ms. Lanham, you have about five minutes remaining. Use that if you wish. Your Honor, I won't use all of it, but we would ask that the court does affirm the 924C conviction in this case based on the two distinctions between ordinary recklessness and malice aforethought that I've laid out. This court's case law really points to that conclusion. Lacina and Pineda Doval talking about the heightened awareness of the risk that is the difference between malice aforethought and ordinary recklessness. The model penal code and the other treatises that opposing counsel has cited in this case also support that in saying that a prosecutor should really only charge murder where the facts show that the mens rea is comparable to intent or knowledge. And the second part is the level of the risk involved, which this court very clearly and Pineda Doval held must be higher. And in Celestine and Tyson, the Supreme Court said is a natural but not inevitable risk of death. So, Your Honor, for those two reasons, malice aforethought is not the same thing as recklessness. It looks like knowledge for purposes of the against another language and the 924C conviction should be affirmed. All right. Does anybody have any questions since we have some time remaining? I have a question on the restitution order, Ms. Lanham. Yes. I'm just wondering if you could let me know if the factual findings are adequate here to support aspects of the restitution award. And for me specifically, the $19,000 that Ms. Begay spent on the truck and the $707 she spent on automobile insurance, even under a plain air review, I was just concerned about that amount of money without any sufficient factual findings because her truck, from what I understand, was not the same kind and quality that the new truck was. And so, I don't know. I know that's probably you were not anticipating questions on that, but I just wanted to ask in case you did. So, I think I can probably answer it, but likely by pointing to the difference between the way the plain air standard interacts with a factual finding like that versus a legal finding. As Judge Miller asked me the question about de novo review in terms of the legal finding. And that is that the defendant didn't put anyone on notice in the district court that those factual findings, which were in the PSR, which the district court adopted, that there was anything wrong with them at all. So, in relying on the PSR, it looks as though the district court had sufficient factual findings based on its review of the PSR. Okay. Thank you very much. Appreciate your oral argument here, Ms. Lena. I will call upon Ms. Cunningham at this time for a two-minute rebuttal. Thank you, Your Honor. As Judge Smith said, the standards that the government has set forth for second-degree murder simply were not at issue in my client's case. The jury instruction simply said intentionally or recklessly with extreme disregard for human life. I will point out that that is this court's model instruction. That is the standard used in most of the federal cases. That is also the standard used in the model penal code. And the model penal code recognizes that it inherently lacks clarity and it is a judgment call for the trier of fact. I would also like to point out that ordinary recklessness requires knowledge of risk. It is defined as a conscious disregard of a substantial and unjustifiable risk. All forms of recklessness require knowledge of risk. And that is why extreme recklessness, at least in its least serious iteration, is much closer to ordinary recklessness, it is one reason why, than to knowledge. The Baez-Martinez case, the reasoning was flawed. They didn't have the benefit of Borden. And they specifically emphasized that extreme recklessness had to entail a practical certainty of harm. And that is simply not true. Pineda-Duval actually supports our case because it talks about the difference being one of degree. There is a blurry line between either a high risk of death, which is reckless, or a very high risk of death. It is up to the trier of fact. Pineda-Duval specifically gives the example of speeding on a crowded street as an example of second degree murder. Justice Kagan made clear in Borden that that does not qualify. The treatises Lafave and model penal code and also just the drunk driving murder cases themselves demonstrate that the actions need not come anywhere near to a likelihood or a practical certainty. And Tyson noted that only some reckless murders approach intent or knowledge, only some of them do. And in order to support the death penalty, you need not only extreme recklessness, but active participation in a major felony. And one more point, Davis requires the categorical approach for 924C. Crime of violence simply does not require an element of discharging a gun. Thank you. Ms. Cunningham, Ms. Lanham, thank you so much, both of you, for your excellent oral arguments here today. The case of United States of America versus Radley Urban is submitted and we are adjourned. Thank you. This court for this session stands adjourned.
judges: MURGUIA, McKEOWN, WARDLAW, RAWLINSON, CLIFTON, SMITH, IKUTA, CHRISTEN, BENNETT, MILLER, VANDYKE